Pro Se 7 (Rev. 10/16) Complaint for Employment Discrimination

# United States District Court

## for the

## NORTHERN DISTRICT OF ALABAMA

FILED

2021 APR 21 P 1: 00

U.S. DISTRICT COURT
N.D. OF ALABAMA'

| | |
|---|---|
| *Plaintiff,* *(Write your full name. No more than one plaintiff may be named in a pro se complaint)* **Holly Boothe** v. **Circle K Inc. David Bean Kimberly Rachel** *Defendant(s),* *(Write the full name of each defendant who is being sued. If the names of all defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names)* | } } } } } } } } } } } } } } } } |

Case No.: 2:20-CV-01804-SGC
*(to be filled in by the Clerk's Office)*

JURY TRIAL ☐ Yes ☐ No

**Amended**

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff

Name            Holly J. Boothe
Street Address  008 13th Ave SW
City and County Alabaster, AL Shelby
State and Zip Code AL 35007
Telephone Number 251-362-1014
E-mail Address *(if known)* mslett77@gmail.com

☒ **Check here to receive electronic notice through the e-mail listed above. By checking this box, the undersigned consents to electronic service and waives the right to personal service by first class mail pursuant to Federal Rule of Civil Procedure 5(b)(2), except with regard to service of a summons and complaint. The Notice of Electronic Filing will allow one free look at the document, and any attached PDF may be printed and saved.**

04/20/2021
**Date**

Holly J. Boothe
**Participant Signature**

## II.    Basis for Jurisdiction

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

Name — Kimberly Rachel

Job or Title *(if known)* — State manager

Street Address

City and County — Calera, Shelby

State and Zip Code — AL, 35007

Telephone Number — 205-300-2376

E-mail Address *(if known)*

Defendant No. 2

Name — David Bean

Job or Title *(if known)* — District Manager

Street Address — 1107 Town Village Dr.

City and County — Helena, Shelby

State and Zip Code — AL, 35007

Telephone Number — 205-577-1003

E-mail Address *(if known)*

Defendant No. 3

Name — Circle K Inc

Job or Title *(if known)*

Street Address — P.O. Box 52085

City and County — Phoenix

State and Zip Code — AZ 85072

Telephone Number — 602-728-8000

E-mail Address *(if known)*

Defendant No. 4

    Name                           _____

    Job or Title *(if known)*     _____

    Street Address             _____

    City and County          _____

    State and Zip Code       _____

    Telephone Number       _____

    E-mail Address *(if known)*   _____

## C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is:

    Name

    Street Address

    City and County

    State and Zip Code

    Telephone Number

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race color, gender, religion, national origin).

    *(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

    *(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Other federal law *(specify the federal law)*:

_____

Relevant state law *(specify, if known)*:

_____

Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐ Failure to hire me

☒ Termination of my employment

☐ Failure to promote me

☒ Failure to accommodate my disability

☒ Unequal terms and conditions of my employment

☒ Retaliation

☐ Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s):

January 3rd 2020 through

february 15th 2020; November 11th

C.   I believe that defendant(s) *(check one)*:   2019 - January 28th

☒   is/are still committing these acts against me   2020

☐   is/are not still committing these acts against me   as well

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☒   race  _____

☒   color  _____

☒   gender/sex  _____

☐   religion  _____

☐   national origin  _____

☐   age *(year of birth)*  _____
     *(only when asserting a claim of age discrimination)*

☐   disability or perceived disability *(specify disability)*_____

_____

E.   The facts of my case are as follows. Attach additional pages if needed. _____

Ms. Kimberly Nouica make racial slurs

when I got my hair done. like "a black

girl" she said to me on several occasions

"I am white not black" I have attempted

my statement along with my paper

work and text messages.

_____

_____

_____

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*: 05|07|2020

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter

☒ issued a Notice of Right to Sue letter, which I received on *(date)*: 04|01|2020

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question:

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☒ 60 days or more have elapsed

☐ less than 60 days have elapsed

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Loss wages 01-03-2020 through present July Apr 12, 2021.

Harrusment 01-03-2020 through 01-28-2020

False accusations - 01|24|2020

Wrongful termination - 01|24|2020

Blackwell - 01|24|2020 through 02|15|2020

$350,000

## VI. Certification and Closing

Under Rule 11 of the Federal Rules of Civil Procedure, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of Signing: 04 | 21 | 2021

Signature of Plaintiff: _____

Printed Name of Plaintiff: _____

### B. For Attorneys

Date of Signing: _____

Signature of Attorney: _____

Printed Name of Attorney: _____

Bar Number: _____

Name of Law Firm: _____

Street Address: _____

State and Zip Code: _____

Telephone Number: _____

E-mail Address: _____

To: EEOC

From: Haly Boothe

Re: Incident with Kimberly Rachel on January 3, 2020

Date: July 13, 2020



FILED

2021 APR 21 P 1: 00

U.S. DISTRICT COURT
N.D. OF ALABAMA

To whom it may concern:

This response is to state the events that happened January 3, 2020 when Kimberly Rachel came to What-A-Burger (my part-time employer) after I contacted her at 8:46 AM via text message to inform her I would not be able to work my scheduled shift at 4p. I had just talked to my doctor at 8:30 A.M. and told her how sick I was. My doctor told me to come to the hospital because what I described to her was dehydration. My doctor advised that I have someone bring me to the hospital because I did not need to drive. My shift at What-a-Burger ends at 2P.M. As the morning progressed, I got sicker and I was unable to complete my shift, because I went to the back office. I stated in the text message sent to Ms. Rachel that my doctor was admitting me to the hospital for severe dehydration. Therefore, I needed someone to cover my shift which is 4P- 12A.

Ms. Rachel stated in her dispute that I told her I would contact her later that day to let her know how I was doing. The communication with Ms. Rachel was via text messages (copies are included), and I never said I would contact her later. The original text message communicated to her that I was going to the hospital, because I was dehydrated. However, I was extremely sick, and I was sitting in the back office approximately at 1:05 P.M. at What-A-Burger, when I noticed Ms. Rachel's car parked at the Shell station next door facing the drive-thru. It was at this time, I asked my co-worker, Mary Phillips to move my car from the back parking lot to the front of the building.

I was watching from inside the building when I saw Ms. Rachel drive up behind my car and she blocked it in. Ms. Phillips came back inside What-a-Burger and we notified the assistant

manager, De'Shaun Montgomery. Ms. Montgomery went outside and moved my car to the back parking lot, and Ms. Rachel followed Montgomery to the back lot then back to the front parking lot where Ms. Rachel blocked my car in once again.

At this time, Ms. Montgomery gets out of my car, and she walks over to Ms. Rachel's car and said something to her. When Ms. Montgomery came inside she told me that she told Ms. Rachel she needed to leave the premises. Montgomery stated that Ms. Rachel became irate and called me (Haly Boothe) a liar.

Ms. Rachel claims to have been concerned about me, but she never called my phone, or came inside What-a-Burger to inquire about me. Instead of showing concern, Ms. Rachel texted my phone and called me a liar! Ms. Rachel stayed parked beside my vehicle at What-a-Burger until 3:08 P.M. At this time, I called the district manager, David Bean and told him about my experience with Ms. Rachel this morning. Mr. Bean stated he had no idea what was going on, and he would contact Ms. Rachel and find out. A meeting with Ms. Rachel and Mr. Bean took place on Thursday, January 23, 2020.

However, Ms. Rachel sent me a text message Friday, January 3, 2020 at 3:47 P.M. stating I could not return to work without a full release from my doctor. Since Ms. Rachel required a release from my doctor, I took my discharge papers from the emergency room to Circle K and placed them on the desk in the back office. I wrote on the discharge papers that I would return to work on Wednesday, January 8, 2020 since my regular off day is on Tuesday. In addition, my doctor's office does not open until 9 A.M. Therefore, I was unable to get a full release to return to work Sunday, January 5, 2020 or Monday at 7 A.M. on January 6, 2020. Therefore, Ms. Rachel took me off the schedule for Sunday, January 5, 2020, because I could not get a note from my doctor until the office opened at 9 AM on Monday, January 6, 2020.

Unfortunately, I became ill again on Tuesday, January 7, 2020, and I had to go back to the ER to get more IV's. Therefore, I notified Ms. Rachel and I also stated I would have a doctor's note when I return back to work on Thursday, January 9, 2020. When I requested to

take a vacation day to cover my absence on January 3, 2020. At the time I requested a vacation day the schedule had not been made for the following week. The schedule was actually made Tuesday, January 7, 2020.

I returned to work on Thursday, January 9, 2020. Ms. Rachel said I did not perform my duties. However, Circle K log shows that I made the daily deposits, signed the deposit book, and took the deposit to the bank. In addition, Ms. Rachel was concerned that I was talking about her and she claimed I told other employees and customers about the incident at What-a-Burger. However, I never spoke about the situation that took place at What-a-Burger to anyone. When customers asked where I had been. I stated "I have been sick." Ms. Rachel was in fact telling the employees what she had done when she came to What-a-Burger. Ms. Rachel shared her actions with two employees. These employees are Bobby Snider, (her spouse), and John Mangina. I told Mr. Bean that Ms. Rachel was the one violating the "Light of Day" policy by discussing it with other employees.

Ms. Rachel continues to harass me and send text messages while I am working at What-a-Burger. On Friday January 24, 2020, the day after the meeting, Ms. Rachel sent several text messages at 8:19 A.M. questioning me about the truck order I placed on Thursday, January 23, 2020. When I did not respond, at 10:55 A. M., she sent another text message saying "NO RESPONSE?" At 12:22 P.M, after I still didn't respond, Ms. Rachel sent me another message saying "I let David know that you apparently are refusing to respond to me." A fast food restaurant is very busy. Employees at What-a-Burger do not have time to stand around, or check their phones until they go on break. Employees are not allowed to have their phone with them while they are working. Since I was working the drive-thru, I was not able to respond to Ms. Rachel's numerous text messages until I took a break at 12:30 P.M.

While I was on break, I responded to Ms. Rachel via text message and I stated "I'm not refusing to answer you, I'm at work!" That same day when I went to work at Circle K, Ms. Rachel sent me a text message on Friday January 24, 2020 at 4:48 P.M. saying "Can you and

Robin put up the bibs (bibs are 30 pound boxes of sodas) in the back room tonight"? "That's all we left for yall, Thank you." I responded that I would ask Robin to help with the bibs and Ms. Rachel responded back "OK, You can't?" At this point it seems that Ms. Rachel is expecting a pregnant employee to lift the 30 pounds bibs. Therefore, I responded by saying "You do know that I am 5 months pregnant? But I will ask Robin too." Ms. Rachel still proceeded to say "You need to help her, there are small boxes back there that you can get and think some trash bags etc."

Ms. Rachel did not take into consideration that I am 5 months pregnant, and Robin has issues with her back, but we were expected to lift heavy sodas instead of having the employee on day shift help her put up those heavy sodas, she left it for me to do.

Furthermore, on Monday, January 27, 2020 at approximately 12:45 P.M Mr. Bean came into the store and requested I meet with him in the back office. While in the back office he stated that Ms. Rachel came to him stating I was still talking about her and the What-a-Burger incident. I explained to Mr. Bean that I have not been talking about Ms. Rachel to anyone and in fact I could care less about Ms. Rachel. I'm here to do my job and go home. Mr. Bean then informs me that I am not allowed to work there anymore that I need to transfer to a store in Hoover, Alabama. When Mr. Bean mentioned Hoover, Alabama. I stated to him that I could not travel that far because I needed to be close to my children since they attended daycare. Mr. Bean stated to me that transferring was my only option. It was at this point I clocked out because Mr. Bean told me I could no longer be at the store.

I stated to Mr. Bean that I needed to hear recordings or see proof that I was violating any policies. Mr. Bean stated that he did not have to allow me to listen to anything. I left the store. At 2:02 P.M I sent Mr. Bean a message (which I will include in my statement) of how I am not transferring to another store. On Tuesday, January 28, 2020 I texted Mr. Bean and Ms. Rachel asking why I was not on the schedule for the week . I did not receive a response from either

party. I also sent a text to Mr. Bean stating that I was not transferring when I did nothing wrong and for him to have his boss call me ASAP!

On Wednesday, January 29, 2020 at 8:28 A.M., I sent Mr. Bean a text message stating that I had put in for vacation and requested that he approve it. He never responded. However, at 2:30 P.M. I received a notification via the Circle K workday app that Kimberly Rachel denied my vacation request. I sent Mr. Bean another text message at 2:34 P.M Wednesday, January 29, 2020 asking why my vacation was denied. Again, there was no response from Mr. Bean until the next morning at 8:21 A.M. Mr. Bean stated that the request does not come to him. I then replied back that if my vacation time was going through Ms. Rachel, she was denying it, and that is why I was requesting Mr. Bean to approve my vacation time. Mr. Bean responded back that Kim was going to approve my vacation time, but only if I brought the keys to the store, then would she approve my vacation time. Friday, January 31, 2020 at 7:26 A. M. Ms. Rachel sent me a text message asking me if I would bring the keys by the store. I returned the keys to the store at 8:55 P.M. Friday, January 31, 2020. My vacation request was approved. While I was on vacation I continued to struggle with my health due to my pregnancy, but I offered to train someone to take my place.

Please find enclosed a copy of the text message conversations with Ms. Rachel and Mr. Bean. Thank you for your assistance in this matter. If you should have any questions, please do not hesitate to contact me.

Respectfully Submitted,
Haly J. Boothe
1230 Bunting Dr.
Alabaster, Alabama 35007
251-362-1014
ms.lett77@gmail.com

Kim Starkey, Store Manager





























## COBRA Continuation Enrollment Form

### PayFlex Systems USA, Inc. for Circle K Stores Inc.

HALY BOOTHE
1230 BUNTING DR
ALABASTER, AL 35007

Qualifying Event:          Termination of Employment
Participant ID:            22573932
Qualifying Event Date:     01/24/2020

Date of Birth:             _____

Social Security Number:    _____

Telephone Number:          _____

### If Electing by Mail:

- This Election Form must be postmarked before **07/14/2020.**

- Please be sure to include this completed form with your initial payment. DO NOT send your initial payment without this form to ensure accurate enrollment.

- The initial premium includes all payments due from your first day of COBRA through the current month. For example, if your first day of COBRA coverage is in the month of July and you are making your initial premium payment in August; your first payment should include the premiums due for the months of July and August.

- You are allowed to delay the premium payment for up to forty-five days after you have signed, dated and submitted your COBRA Continuation Enrollment Form. Any claims submitted for expenses incurred following the date of the qualifying event may be held in suspense until all premiums which are due have been paid.

- The initial premium needs to include any premium in the pro-rated column as well as your first full monthly premium

- Future premiums are due on the first of each month thereafter, and should be mailed on or before the due date. Failure to pay premiums by specified premium due dates may terminate your participation in the Plan.

- **Make checks payable to PayFlex Systems USA, Inc. and mail along with completed form to:**

PayFlex Systems USA, Inc.for
Circle K Stores Inc.
BENEFIT BILLING DEPARTMENT
P.O. BOX 953374
ST. LOUIS, MO 63195-3374
(800) 359-3921

- Enclosed is my check for $_____. I understand that future premiums are due the first of each month. I also understand that failure to pay the required premiums will result in termination of coverage.

### If Electing Online:

- If electing online via: http://www.payflex.com please refer to the "online account access document" included in this package.

- The initial premium includes all payments due from your first day of COBRA through the current month. For example, your first day of COBRA coverage is in the month of July and you are making your initial premium payment in August; your first payment should include the premiums due for the months of July and August.

- You are allowed to delay the premium payment for up to forty-five days after your online COBRA Election has been made. Any claims submitted for expenses incurred following the date of the qualifying event may be held in suspense until all premiums which are due have been paid.

- The initial premium needs to include any premium in the pro-rated column as well as your first full monthly premium.

- Future premiums are due on the first of each month thereafter and should be paid online and/or mailed on or before the due date. Failure to pay premiums by specified premium due dates may terminate your participation in the Plan.

Proprietary